IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ISKENDER ALMAZOV,<br><br>     Petitioner,<br><br>v.<br><br>CORY WILLIAMS, in his official capacity as Chief Jail Administrator of Polk County Jail; TODD BLANCHE, in his official capacity as Acting United States Attorney General; DAVID EASTERWOOD, in his official capacity as St. Paul Field Office Director of Immigration and Customs Enforcement and Removal Operations; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; and MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security,<br><br>     Respondents. | **No. 4:26-cv-00080-RGE-HCA**<br><br><br>**ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Petitioner Iskender Almazov brings a petition for a writ of habeas corpus against Respondents Cory Williams, in his official capacity as Chief Jail Administrator of Polk County Jail; Todd Blanche, in his official capacity as Acting United States Attorney General; David Easterwood, in his official capacity as St. Paul Field Office Director of Immigration and Customs Enforcement and Removal Operations; Todd Lyons, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; and Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security. Pet. Writ Habeas Corpus, ECF No. 1.[1] In this habeas corpus petition, Almazov alleges he was arrested and is being detained by

---

[1] The Court refers to Todd Blanche, David Easterwood, Todd Lyons, and Markwayne Mullin as "Federal Respondents." The Court refers to Cory Williams as "State Respondent."

Respondents in violation of the Constitution and laws of the United States. *Id.* ¶¶ 6–7. Almazov moves for an order requiring Respondents to release him from custody or provide him with a bond hearing within seven days. *Id.* ¶ 9. Following the Eighth Circuit's decision in *Avila v. Bondi,* the Court ordered additional briefing in this matter. No. 25-3248, 2026 WL 819258, at *1–6 (8th Cir. Mar. 25, 2026); Order Granting Mot. Reconsider, ECF No. 7.

The Court concludes Almazov's re-detention after humanitarian parole into the United States violates the Due Process Clause. Therefore, the Court grants Almazov's petition for a writ of habeas corpus.

## II.    BACKGROUND

The pertinent facts alleged in the petition are uncontested. *See* Fed. Resp'ts' Reply Pet. Writ Habeas Corpus 1–2, ECF No. 4. The petition alleges Almazov is a thirty-seven-year-old Russian native and citizen. ECF No. 1 ¶¶ 18, 49. He entered the United States on April 30, 2023. *Id.* ¶ 52; *see* Patrin Decl. ¶ 10, ECF No. 4-1. Almazov was given a Notice to Appear and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), the humanitarian parole provision, to allow him to apply for asylum. ECF No. 1 ¶¶ 52–53, 55; ECF No. 4 at 1–2; *see* 8 U.S.C. § 1182(d)(5)(A) (granting the Secretary of Homeland Security the authority to parole noncitizens into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit"). Almazov's parole "appears to have elapsed" after one year. ECF No. 4 at 2.

Almazov submitted an Application for Asylum and Withholding of Removal at the end of 2023. ECF No. 1 ¶ 54; ECF No. 4 at 2. This asylum application remains pending before the Immigration Court. *Id.*

On February 10 or 11, 2026, the Iowa State Patrol detained Almazov. ECF No. 1 ¶ 56; ECF No. 4 at 2. He was then turned over to Immigration and Custody Enforcement (ICE) officers. ECF No. 4 at 2. He is currently detained in Polk County Jail. ECF No. 1 ¶¶ 57–58. Almazov was scheduled to appear before an Immigration Judge on March 5, 2026. ECF No. 4 at 2.

Almazov, proceeding pro se, filed a petition for a writ of habeas corpus, asserting he is being detained in violation of the Fifth Amendment (Counts I and II) and the Administrative Procedure Act (APA) (Count III). ECF No. 1 ¶¶ 60–81. Almazov requested Respondents release him from custody or provide him with a bond hearing within seven days. *Id.* ¶¶ 6–7, 9. Almazov also requested the Court issue a show cause order to require Respondents to show why Almazov was not being unlawfully detained. *Id.* at 19. On February 20, 2026, the Court issued a show cause order. Order Show Cause, ECF No. 2. Federal Respondents filed a response in accordance with the Court's show cause order. ECF No. 4. State Respondent Williams, who has physical custody of Almazov, did not file a response.

On March 24, 2026, the Court granted in part Almazov's petition for a writ of habeas corpus and required Respondents to provide Almazov with a bond hearing within seven days. Order Granting in Part Pet. Writ Habeas Corpus, ECF No. 5.

On March 25, 2026, the Eighth Circuit issued a decision in *Avila.* 2026 WL 819258, at *1–6. In light of the *Avila* decision, Federal Respondents filed a motion to reconsider and vacate the Court's order requiring Respondents to provide Almazov with a bond hearing within seven days. Fed. Resp'ts' Mot. Reconsider, ECF No. 6.

Because the Eighth Circuit's interpretation of § 1225(b)(2) and § 1226 in *Avila* affected the controlling law at issue in this matter, the Court granted Federal Respondents' motion to reconsider. Order Granting Mot. Reconsider, ECF No. 7. The Court vacated its order granting in part Almazov's petition for a writ of habeas corpus and ordered Respondents to submit additional briefing addressing the impact of *Avila* on this matter within ten days. *Id.* The Court also ordered Almazov to submit additional briefing within ten days of the submission of Respondents' brief. *Id.*

Due to the change in legal landscape precipitated by the *Avila* decision and the Court's subsequent order to submit additional briefing, Almazov retained counsel. Pet'r's Mot. Waive

Local Counsel ¶ 8, ECF No. 10. Almazov filed a motion requesting his counsel be admitted pro hac vice pursuant to Local Rule 83(d)(3). Pet'r's Mot. Pro Hac Vice, ECF No. 8; *see* LR 83(d)(3). Almazov also filed a motion to waive the associate counsel requirement of Local Rule 83(d)(4). ECF No. 10; *see* LR 83(d)(4). Federal Respondents stated they had no objection to Almazov's request to waive the associate counsel requirement. Fed. Resp'ts' Resp. Pet'r's Mot. Waive Local Counsel, ECF No. 13.

Federal Respondents submitted supplemental briefing addressing the impact of *Avila* on the present matter, in compliance with the Court's Order. Fed. Resp'ts' Suppl. Br., ECF No. 12; *see* ECF No. 7.

Due to the compressed timeline and unique circumstances of this matter, the Court granted in part Almazov's motion to waive the associate counsel requirement and granted Almazov's motion for leave to appear pro hac vice to allow Almazov to file a response to Federal Respondents' supplemental briefing. Order Granting in Part Pet'r's Mot. Waive Local Counsel, ECF No. 14; *see* ECF No. 8; ECF No. 10.

Almazov subsequently submitted supplemental briefing addressing the impact of *Avila* on the present matter. Pet'r's Suppl. Br., ECF No. 15.

The Court sets out additional facts below as necessary.

## III.    LEGAL STANDARD

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). "[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). The district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*,

4

533 U.S. 678, 687–88 (2001). The district court's habeas jurisdiction also includes noncitizens' challenges to detention. *See id.*; *Jennings v. Rodriguez,* 583 U.S. 281, 292–96 (2018).

## IV.    DISCUSSION

Almazov alleges his re-detention after parole into the United States violates his Fifth Amendment procedural due process rights, Fifth Amendment substantive due process rights, and the APA. ECF No. 1 ¶¶ 60–81; *see* ECF No. 15.[2] Federal Respondents argue the Eighth Circuit's decision in *Avila* resolves this matter because Almazov is an "applicant for admission" and, thus, subject to mandatory detention pursuant to § 1225(b)(2)(A). ECF No. 12 at 1–2. Federal Respondents also argue Almazov's detention comports with due process. *Id.* at 2–4.

The Court first addresses the relevance of the Eighth Circuit's *Avila* decision on this matter. *See Avila,* 2026 WL 819258, at *1–6. Next, the Court assesses the constitutional due process rights guaranteed noncitizens present in the United States. The Court then evaluates the merits of Almazov's procedural due process claim.

### A.    Applicability of *Avila*

During the pendency of this matter, the Eighth Circuit decided *Avila v. Bondi.* 2026 WL 819258, at *1–6. Federal Respondents argue the *Avila* decision forecloses Almazov's claims and directs his mandatory detention pursuant to § 1225(b)(2)(A). ECF No. 12 at 1–4. The Court briefly outlines the *Avila* decision and assesses its applicability to Almazov's claims.

Avila entered the United States without inspection or admission in 2006 and 2016. *Avila,* 2026 WL 819258, at *1.[3] The Department of Homeland Security (DHS) encountered Avila during

---

[2] Because Almazov's procedural due process claim provides an independent basis for relief, the Court declines to address the remaining substantive due process and APA claims for relief.

[3] Almazov correctly notes the petitioner in the Eighth Circuit *Avila* case, and the petitioner in the similar Fifth Circuit *Buenrostro-Mendez* case, entered the United States without inspection and were encountered for the first time by United States officials in the interior of the United States. ECF No. 15 at 1–3; *Avila,* 2026 WL 819258, at *1; *Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 500 (5th Cir. 2026). Almazov, in contrast, presented himself at a port of entry and was

a traffic stop in 2026, where Avila admitted he had entered the country without inspection and lacked documents authorizing his admission. *Id.* DHS initiated removal proceedings against Avila and detained him without bond. *Id.* Avila filed a habeas petition seeking immediate release or a bond hearing, arguing he was not "seeking admission" to the United States and thus did not fall within the mandatory detention framework of § 1225(b)(2)(A). *Id.*; *see* 8 U.S.C. § 1225(b)(2)(A).

The Eighth Circuit concluded, as a matter of statutory interpretation, § 1225(b)(2)(A) applies to noncitizens present in the United States and, therefore, authorizes mandatory detention of noncitizens present in the United States. *Id.* at 2–6 (holding the ordinary meanings of "applicant for admission" and "seeking admission" are the same such that "§ 1225(b)(2)(A) mandates the detention of unadmitted aliens already present inside the United States").

The *Avila* decision does not address the constitutional procedural due process inquiries necessary to resolve Almazov's claims. Federal Respondents argue *Avila* forecloses Almazov's claims and authorizes his mandatory detention pursuant to § 1225(b)(2)(A). ECF No. 12 at 1–2. But *Avila* considered only the question of statutory interpretation of § 1225(b)(2)(A)—whether "applicant for admission" and "seeking admission" are permissibly read to include noncitizens present in the United States—and did not address procedural due process under the Fifth Amendment. *Avila,* 2026 WL 819258, at *2–6. The Eighth Circuit remanded the case "for further proceedings consistent with this opinion." *Id.* at *6. Presumably, the further proceedings will include consideration of Avila's due process claims, which the district court did not evaluate in the first instance and which were not before the Eighth Circuit on appeal. *See Avila v. Bondi,* No. CV 25-3741 (JRT/SGE), 2025 WL 2976539, at *1–7 (D. Minn. Oct. 21, 2025), *rev'd and remanded,* 2026 WL 819258. *Avila* has no bearing on the Court's analysis of whether Almazov's re-detention after humanitarian parole into the United States violates his constitutional right to

---

affirmatively granted parole into the United States pursuant to the humanitarian parole provision of § 1182(d)(5)(A). ECF No. 1 ¶ 52; *see* 8 U.S.C. § 1182(d)(5)(A).

procedural due process.

### B.    Almazov's Due Process Rights

The Court next turns to the constitutional due process rights guaranteed Almazov as a noncitizen present in the United States.

Federal Respondents assert "aliens are entitled to the rights provided by statute and 'the Due Process Clause provides nothing more.'" ECF No. 12 at 2 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020)). This position misrepresents the rights afforded noncitizens present in the United States and the Constitution's protective guarantees. By selectively quoting from *Thuraissigiam*, Federal Respondents represent to the Court that noncitizens present in the United States are not entitled to protection under the Constitution and contend noncitizens' rights are limited to those proactively granted by statute. *See* ECF No. 12 at 2–3. This is not the law.

The Due Process Clause applies to all persons within the United States, including noncitizens. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("[A]ll persons within the territory of the United States are entitled to the protection guarant[e]ed by those [Fifth and Sixth] amendments"); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) ("These provisions [of the Constitution] are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws."). Accordingly, "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Almazov, as a noncitizen present in the United States, is entitled to due process rights as guaranteed by the

Constitution.

*Thuraissigiam*, upon which Federal Respondents rely to argue Almazov is not entitled to due process rights, does not displace Almazov's constitutional guarantees. *Thuraissigiam* addressed a fundamentally different set of circumstances than those presented to the Court in this matter. First, the respondent in *Thuraissigiam* brought a due process challenge regarding the sufficiency of removal proceedings, not a challenge to detention pending a decision on removal. *See Thuraissigiam*, 591 U.S. at 117–18 ("[R]espondent did not ask to be released. Instead, he sought entirely different relief: vacatur of his 'removal order'"). Federal Respondents assert "aliens are entitled to the rights provided by statute and 'the Due Process Clause provides nothing more,'" ECF No. 12 at 2, but the actual sentence in *Thuraissigiam* upon which Federal Respondents rely states, "an alien *in respondent's position* has only those rights *regarding admission* that Congress has provided by statute," *Thuraissigiam*, 591 U.S. at 140 (emphasis added). Federal Respondents' selective quotation from *Thuraissigiam* collapses the rights provided by statute regarding admission with the rights guaranteed under the Constitution regarding liberty. While Congress provides the contours of the admission process into the United States by statute, the Constitution guarantees fundamental protection of liberty interests.

Second, the respondent in *Thuraissigiam* was apprehended by immigration officers immediately upon entry into the United States, within twenty-five yards of the border, and never released into the United States. *Id.* at 114. In foreclosing the respondent's due process claim regarding his removal proceedings, the Supreme Court explicitly differentiated between respondent and "aliens who have established connections in this country[,] [who] have due process rights in deportation proceedings." *Id.* at 107. "Th[is] distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. It is uncontested that Almazov effected an entry into the United States approximately three years ago; indeed, he was affirmatively paroled into the United States. ECF

No. 1 ¶ 52–53, 55; ECF No. 4 at 1–2. Almazov is not in the same position as the respondent in *Thuraissigiam. Cf. Thuraissigiam*, 591 U.S. at 139–40. Almazov is not "seeking initial entry" into the United States—he is challenging his re-detention after being paroled. *Cf. id.* at 139. Therefore, *Thuraissigiam* does not foreclose Almazov's due process challenge to his re-detention after parole into the United States.

Federal Respondents' misrepresentation of the holding in *Thuraissigiam* is belied by their reliance on *Landon.* ECF No. 12 at 2–3. Federal Respondents state, "[a]n alien 'seeking *initial admission* to the United States requests a privilege and has no constitutional rights regarding his *application.*'" *Id.* (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)) (emphasis added). *Landon* highlights the distinctions the Court made in *Thuraissigiam*—"application," not detention, and "initial admission," not authorized and established presence in the United States. Federal Respondents' assertion that "aliens are entitled to the rights provided by statute and 'the Due Process Clause provides nothing more'" is broader than the holding in *Thuraissigiam* and inapplicable to this matter. ECF No. 12 at 2.

Almazov, as a noncitizen present in the United States challenging his re-detention after parole, is protected by the guarantees of the Fifth Amendment.

### C.   Procedural Due Process

The Court turns to the merits of Almazov's Fifth Amendment procedural due process claim. Almazov argues his re-detention after humanitarian parole into the United States violates his procedural due process rights under the Fifth Amendment. ECF No. 1 ¶¶ 60–66; ECF No. 15 at 6–9. Federal Respondents argue detention during deportation proceedings is consistent with due process. ECF No. 12 at 2–4.

The Fifth Amendment guarantees "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests

within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To assess whether a governmental procedure provides due process, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Federal Respondents argue the *Mathews* balancing test is inapplicable to this matter, relying on the Eighth Circuit's decision in *Banyee v. Garland.* 115 F.4th 928, 930–34 (8th Cir. 2024); ECF No. 12 at 4. In *Banyee,* the Eighth Circuit stated there is "no room for a multi-factor 'reasonableness' test" when evaluating the constitutionality of the duration of mandatory detention for one detained pursuant to § 1226(c) because "the government can detain an alien for as long as deportation proceedings are still pending." *Banyee*, 115 F.4th at 933 (internal quotation marks and citation omitted) (emphasis omitted).

*Banyee* is not applicable to Almazov's procedural due process claim. Almazov challenges his re-detention as a violation of the Fifth Amendment, not, as in *Banyee,* the length of detention. ECF No. 1 ¶ 66; ECF No. 15 at 6–8; *see Banyee,* 115 F.4th at 930. Further, *Banyee* addressed mandatory detention pursuant to § 1226(c), which covers inadmissible or deportable noncitizens who have committed particular crimes; Almazov is not detained pursuant to § 1226(c). *See Banyee,* 115 F.4th at 933; *cf. Pedro A.D.L.O.O. v. Bondi,* No. CV 26-1959 (DWF/DJF), 2026 WL 948970, at *2 (D. Minn. Apr. 8, 2026) (finding *Banyee* inapposite and applying the *Mathews* balancing test because petitioner was not detained pursuant to § 1226(c) and had no criminal

10

history); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1154 (D. Minn. 2025) (same). The Court finds the *Mathews* balancing test appropriate to evaluate Almazov's procedural due process claim.

### 1.      Private interest

The first *Mathews* factor, "the private interest that will be affected by the official action," weighs in favor of Almazov. *Cf. Mathews,* 424 U.S. at 335.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690; *see also Hamdi*, 542 U.S. at 529 ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). "[L]iberty is valuable and must be seen as within the protection of the [Due Process Clause]. Its termination calls for some orderly process." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Almazov has a strong private interest in his freedom from physical detention. Almazov was paroled into the United States, with the express authorization of DHS, pursuant to the humanitarian parole provision of § 1182(d)(5)(A). ECF No. 1 ¶ 52. He has lived freely in the United States for approximately three years until his February 2026 detention separated him from his family and his community. *Id.* ¶¶ 56, 58. Additionally, district courts across the country have found noncitizens maintain a strong interest in their freedom from imprisonment even if their parole status has expired or been terminated. *See, e.g., Harpreet Singh v. Kevin Raycraft,* No. 1:26-CV-136, 2026 WL 962003, at *7 (S.D. Ohio Apr. 9, 2026); *Jaime Hurtado-Barba v. Paul Perry,* No. 3:26CV188, 2026 WL 950489, at *7 (E.D. Va. Apr. 8, 2026); *Dieng v. Hermosillo,* No. 2:26-CV-00190-LK, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026); *Marceau v. Noem,* No. EP-26-CV-237-KC, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Here, [petitioner] was paroled and released into the country, where she has been living at liberty for over two

years. Regardless of whether [petitioner]'s parole has expired or been terminated, Respondents may not revoke that liberty without an individualized determination of the need to do so."); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *2 (D. Or. Aug. 21, 2025); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 153 (W.D.N.Y. 2025); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025). To the extent Almazov's humanitarian parole has elapsed, *see* ECF No. 4 at 1–2, the Court finds the reasoning in these decisions persuasive and concludes Almazov maintains a strong interest in his freedom from physical detention.

Almazov has spent approximately three years at liberty in the United States—he possesses a strong interest in his freedom from physical detention. The first *Mathews* factor supports Almazov's claim of a Fifth Amendment due process violation for re-detention after parole without process.

### 2.      Risk of erroneous deprivation

The second *Mathews* factor, the risk of an erroneous deprivation of Almazov's private liberty interest and the probable value of additional safeguards, also weighs in favor of Almazov. *Cf. Mathews,* 424 U.S. at 335.

Almazov was paroled into the United States pursuant to the humanitarian parole provision of § 1182(d)(5)(A). *See* ECF No. 1 ¶ 52. Section 1182(d)(5)(A) grants the Secretary of Homeland Security the authority to parole noncitizens into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Humanitarian parole into the United States also requires a determination that the "the alien[] present[s] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b) (2022); *see* 8 C.F.R. § 235.3(b) (2022); *Dieng*, 2026 WL 411857, at *5–7 ("In other words, if a noncitizen has been granted parole [pursuant to § 1182(d)(5)(A)], it means that a DHS official with authority decided

that there were either 'urgent humanitarian reasons' or 'significant public benefit' justifying the parole of that individual, and that the individual did not pose a security or flight risk.'").

After determining Almazov was not a flight risk nor a danger to the community such that he was eligible for humanitarian parole pursuant to § 1182(d)(5)(A), the government provided no process to assess whether those circumstances—whether Almazov had become a flight risk or a danger to the community—changed before depriving him of his liberty through re-detention. "Absent some sort of pre-detention hearing to determine whether his circumstances have changed such that he now presents a danger or a flight risk when the government previously determined that he presented neither, the risk of erroneous deprivation of [Almazov]'s liberty interest is obvious." *Alvarez-Rico v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) (analyzing a due process challenge in the context of § 1226 conditional parole). The risk of erroneous deprivation of liberty is high when no process has been provided before re-detention but after parole into the United States. Further, additional safeguards, such as "an individualized assessment as to the government's interest in detaining Petitioner[,] would ameliorate that risk" of erroneous deprivation. *Pedro A.D.L.O.O.*, 2026 WL 948970, at *3; *cf. Mathews,* 424 U.S. at 335. "Because such a proceeding would give [Almazov] the opportunity to be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond, it would greatly reduce the risk of an erroneous deprivation of his liberty." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 686 (W.D. Tex. 2025).

The second *Mathews* factor also supports Almazov's claim of a violation of due process.

### 3. Government's interest

The final *Mathews* factor—the government's interest, including functional, fiscal, and administrative considerations as to additional procedural requirements—weighs in favor of Almazov. *Cf. Mathews,* 424 U.S. at 335.

The government has a substantial interest in ensuring noncitizens appear for removal

proceedings and do not pose a risk to the communities in which they live. *See Zafra v. Noem*, No. EP-25-CV-00541-DB, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 33 (D. Mass. 2025). However, those interests are not furthered by summary re-detention of paroled noncitizens whom the government previously determined not to be flight risks nor dangers to the community. The government's interest in ensuring community safety and attendance at removal proceedings can be vindicated through an individualized, meaningful assessment as to Almazov's risk of absconding or danger to the community. Further, the fiscal and administrative burdens associated with an individualized assessment of the justification for Almazov's re-detention after parole are minimal given the high costs of detention and existing procedures for determining whether one is a security risk or at risk of absconding. *See, e.g.,* 8 C.F.R. § 212.5(b) (2022).

Because all three *Mathews* factors weigh in favor of Almazov, the Court finds his re-detention after parole constitutes a violation of his constitutional right to due process.

**D.     Remedy**

The Court finds Almazov's re-detention without a pre-detention showing of a change in circumstances violates Almazvo's procedural due process rights under the Fifth Amendment. While the Court previously ordered a bond hearing pursuant to § 1226, *see* ECF No. 5, the Court revises Almazov's remedy in light of the constitutional violation. The Court determines the proper remedy in this matter is Almazov's immediate release from detention. Further, pursuant to the requirements of due process, the Court enjoins Respondents from re-detaining Almazov unless he is first provided meaningful written notice as to the grounds for re-detention and provided a hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Almazov is a flight risk or danger to the community—the same requirement previously determined for his parole. *See* 8 C.F.R. §§ 212.5(b), 235.3(b).

## V.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Petitioner Iskender Almazov's Petition for a Writ of Habeas Corpus, ECF No. 1, is **GRANTED**. State Respondent shall release Petitioner from custody immediately. Federal Respondents shall ensure State Respondent releases Petitioner from custody immediately.

**IT IS FURTHER ORDERED** that Respondents shall certify compliance with the Court's order by filing an entry on the docket by 5:00 p.m. on April 17, 2026.

**IT IS FURTHER ORDERED** that Respondents shall not re-detain Petitioner unless and until providing him with meaningful written notice of the intent to re-detain him and the grounds for re-detention, as well as a hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

**IT IS SO ORDERED**.

Dated this 16th day of April, 2026.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

15